**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LATISH DURDEN, individually and as surviving parent and next of kin of Baby Durden, deceased, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:14-CV-1163-RWS |
| v. | : : | |
| NAPHCARE, INC., | : : | |
| Defendant. | : : | |

## ORDER

This case comes before the Court on Defendant NaphCare, Inc.'s Motion for Summary Judgment [43] and Motion for Sanctions [59] and Plaintiff Latish Durden's Motion to Amend Statement of Material Facts [55] and Motion to Amend Brief in Opposition to Defendant's Motion for Summary Judgment [56].  After reviewing the record, the Court enters the following Order.

## Background

This case arises from the prenatal care provided to Plaintiff while she was an inmate at the Newton County Detention Center ("NCDC") and her March 20, 2012 delivery of a stillborn fetus at the Newton County Medical

Center.  Defendant is the contractor that Newton County hired to provide

correctional healthcare and nursing services to inmates housed at NCDC.  The

following facts are undisputed unless otherwise noted.

In November of 2011, Plaintiff learned that she was pregnant and knew

that she would soon be reporting to NCDC to serve her sentence for a

conviction in state court.  The obstetrician that retained responsibility for her

care during the entirety of her pregnancy and incarceration was Dr. James

Harbin.  Plaintiff's first appointment with Dr. Harbin was on January 17, 2012.

Plaintiff presented to the NCDC on January 25, 2012.  As early as four days

into her sentence, Plaintiff corresponded with the sentencing Judge and sought

a permanent release from NCDC because of her pregnancy.  The Judge offered

Plaintiff the opportunity to delay serving her sentence until after she delivered,

but Plaintiff voluntarily declined.  Plaintiff made this decision because it was

her understanding that her pregnancy was not high-risk.  While at NCDC,

Plaintiff was transported to Dr. Harbin on three dates, all in 2012: February 9,

March 13, and March 19.

During the March 13 visit, Dr. Harbin diagnosed Plaintiff with an

incompetent cervix that, if left untreated, could result in the cervix opening

early leading to either miscarriage or premature delivery. Dr. Harbin admitted Plaintiff to the Newton Medical Center for the successful insertion of a cervical cerclage to treat the incompetent cervix. Plaintiff was discharged two days later and returned to the NCDC infirmary. Later that same afternoon she complained of vaginal discharge. According to Defendant, its nurses evaluated Plaintiff immediately and, within an hour of Plaintiff's complaint, contacted Dr. Harbin, who instructed the nurses to continue to monitor Plaintiff's condition. Plaintiff disputes this.

On the following morning, March 16, 2012, Plaintiff made complaints of sharp pains and vaginal discharge. The response to these complaints is also in dispute. According to Plaintiff, Defendant's staff merely gave her the "run around" even though she made repeated requests for a medical response. In particular, Plaintiff claims that Defendant's nurses told her that she had simply urinated on herself. Defendant, on the other hand, claims that its nurses reacted to her complaints by again contacting Dr. Harbin, who instructed them to continue to monitor Plaintiff. Defendant also claims that for the next two days, March 17 and March 18, Plaintiff was evaluated by Defendant's nurses without reporting any complaints.

On March 19, 2012, Plaintiff complained of low-back pain and yellowish vaginal discharge.  Defendant's nurses contacted Dr. Harbin and he instructed them to transport Plaintiff to his office for evaluation.  After seeing Plaintiff at his office, Dr. Harbin admitted Plaintiff to the Newton County Medical Center's labor and delivery unit for observation.  On March 20, 2012, Dr. Harbin diagnosed a cord prolapse and Plaintiff's fetus was delivered stillborn.

Plaintiff initially filed her Complaint in the State Court of Fulton County.  She named five Defendants, including NaphCare, Inc., and raised claims under both state and federal law.  After removal, the Court entered an Order dismissing with prejudice all claims "except the state law medical negligence claim against NaphCare, Inc."  (Dkt. [15] at 2.)  Defendant has now filed a Motion for Summary Judgment [43] as to that final claim.  Defendant has also filed a Motion for Sanctions [59] based on Plaintiff's submissions in opposition to summary judgment.

## Discussion

## I.    Preliminary Matters

Before taking up the merits, the Court must address an issue relating to Plaintiff's Amended Brief in Opposition to Summary Judgment [56] and

4

Amended Statement of Material Facts [55].  Rather than merely filing these amended documents, Plaintiff's counsel should have filed a motion to amend. They did not.  Nonetheless, these documents appear on the Court's docket as pending motions.  In its response to these "motions," Defendant "assumes arguendo that this Court . . . will grant Plaintiff leave to amend."  (Def.'s Resp. to Pl.'s Am. Br. in Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Am. MSJ Reply"), Dkt. [58] at 3 n.2.)  For this reason, and because the Court wishes to decide this case on the merits, the Court construes Plaintiff's filings [55, 56] as motions to amend and **GRANTS** them both.  The Court will therefore consider Plaintiff's Amended Brief in Opposition to Summary Judgment [56] and Amended Statement of Material Facts [55] as superseding the originals.

## II.   Defendant's Motion for Summary Judgment [43]

### A.   Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the

5

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But the court is bound only to draw those inferences that are

6

reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

B.    Analysis

Defendant seeks summary judgment on the only claim left in this case: medical negligence under Georgia law.  To prove such a claim, a plaintiff must show: (1) the duty inherent in the doctor-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained.  Zwiren v. Thompson, 578 S.E.2d 862, 864 (Ga. 2003).  In medical malpractice cases, the plaintiff must overcome a presumption that the medical services were performed in an ordinary and skillful manner.  Cope v. Evans, 765 S.E.2d 40,

7

41 (Ga. Ct. App. 2014) (citing <u>Beach v. Lipham</u>, 578 S.E.2d 402, 405 (Ga. 2003)).  To do so, the plaintiff must present evidence from expert medical witnesses that the defendant did not exercise due care and skill when performing its services.  <u>Id.</u>  Establishing the final element, proximate cause, also requires expert testimony.  <u>Zwiren</u>, 578 S.E.2d at 865.  This is because "the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson."  <u>Id.</u>

Defendant argues that Plaintiff cannot prove professional negligence because Plaintiff has not provided any expert testimony or even noticed the identity of an expert and that it is now too late as discovery has closed.  (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s SMJ Br."), Dkt. [44] at 16.)  Indeed, a party intending to use expert testimony at trial must disclose the expert's identity to the opposing party.  FED. R. CIV. P. 26(a)(2)(A).  And under the Court's local rules, parties must designate expert witnesses "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert . . . ."  LR 26.2C, NDGa.  In addition, the disclosure of the identity of an expert witness "must be accompanied by a written report—prepared and

8

signed by the witness—if the witness is one retained or specially employed to
provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B).  That
written report must contain several elements including, among other things, a
statement of all opinions the witness will express, the facts or data the witness
considered in forming the opinions, and the witness's qualifications.  FED. R.
CIV. P. 26(a)(2)(B)(i)-(vi).

Plaintiff first counters by arguing that she has in fact provided expert
testimony as to Defendant's professional negligence.  (Pl.'s Am. Resp. to
Def.'s Mot. for Summ. J. ("Pl.'s Am. MSJ Opp'n Br."), Dkt. [56] at 7.)  This
expert testimony comes in the form of an affidavit from Dr. Henry Prince,
which Plaintiff attached to her Complaint when she initially filed in state court.
The purpose of Dr. Prince's affidavit was to satisfy Georgia's requirement that
in certain professional malpractice suits, the plaintiff must "file with the
complaint an affidavit of an expert competent to testify, which affidavit shall
set forth specifically at least one negligent act or omission claimed to exist and
the factual basis for each such claim."  O.C.G.A. § 9-11-9.1(a).  Plaintiff argues
that Dr. Prince's affidavit serves a dual purpose.  It not only satisfied Georgia's
pleading requirement, but also now serves as expert testimony sufficient to

defeat summary judgment.

The Court disagrees.  Plaintiff did not identify Dr. Prince as an expert in her initial disclosures.  (Pl.'s Initial Discs., Dkt. [30] at 2-3, 6.)  And in response to Defendant's interrogatory requests, Plaintiff expressly stated that she "has not yet made any election as to what expert or experts, if any, she intends to use at any hearing or the trial of the case."  (Pl.'s Resps. to Def.'s First Interrogs., Dkt. [44-6] at 12.)  Plaintiff did not supplement either her initial disclosures or her interrogatory responses.  (Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s MSJ Reply"), Dkt. [52] at 8.)  So Defendant was hardly on notice that Plaintiff was intending to use [Dr. Prince's] expert testimony at trial.  See Fed. R. Civ. P. 26(a)(2)(A).  But even assuming that Dr. Prince's affidavit somehow served as a disclosure under Rule 26(a)(2)(A), Plaintiff concedes that Dr. Prince never provided a written report as required under Rule 26(a)(2)(B).  (Pl.'s Am. MSJ Opp'n Br., Dkt. [56] at 8.)  Without such a report, Plaintiff cannot rely on Dr. Prince as an expert at trial or to defend against summary judgment.  See FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

10

evidence on a motion, at a hearing, or at a trial.").

Plaintiff next argues against summary judgment by claiming that she disclosed Dr. Harbin, her treating physician, as an expert witness through correspondence with Defendant.  (Pl.'s Am. MSJ Opp'n Br., Dkt. [56] at 8.) But whether Plaintiff properly disclosed Dr. Harbin as an expert is beside the point.  Dr. Harbin has not provided any testimony in this case.  Thus, he has not provided any expert evidence that Plaintiff could rely on to show a genuine dispute of material fact.

The result of these findings is that Defendant is entitled to summary judgment.  Again, Plaintiff carries the burden of proving her professional negligence claim, and that claim requires expert testimony.  Defendant has provided its own expert reports containing opinions that Defendant did not breach the relevant standard of care and that Defendant's actions were not the proximate cause of Plaintiff delivering her child stillborn.  Because Plaintiff has provided no expert testimony to dispute these opinions, she has failed to generate a question that a jury must decide.  Defendant's Motion for Summary

Judgment [43] is therefore **GRANTED**.[1]

### III.   Defendant's Motion for Sanctions [59]

Defendant moves for sanctions under Rule 11, arguing that Plaintiff's counsel mischaracterized the record and made frivolous arguments in several of its submissions related to Defendant's Motion for Summary Judgment [43]. Those submissions include the following:

- Plaintiff's Statement of Material Facts ("Initial SMF") [50]

- Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Initial Opposition Brief") [51]

- Plaintiff's Amended Statement of Material Facts ("Amended SMF") [55]

- Plaintiff's Amended Brief in Opposition to Defendant's Motion for Summary Judgment ("Amended Opposition Brief") [56]

After Plaintiff filed her Initial SMF and Initial Opposition Brief, Defendant's counsel noticed that those submissions contained a few

---

[1] Despite this finding, the tragedy of this case is not lost on the Court.  Under any circumstances, and especially those here, the loss of a child is tragic.  Still, the Court is obligated to follow the law and has done so in this case.  While that means that Plaintiff's claim must be dismissed, it does not mean that the Court fails to appreciate the extreme sadness of Plaintiff's loss.

AO 72A
(Rev.8/82)

mischaracterizations of the record and reached out to Plaintiff's counsel to

discuss them.  (Kanik Aff., Dkt. [59-2] ¶ 3.)  In particular, Defendant's counsel

was concerned with Plaintiff's statement that "Defendant did not file any

motions challenging the adequacy of [Dr. Prince's] affidavit . . . ."  (Pl.'s Br. in

Opp'n to Def.'s Mot. for Summ. J., Dkt. [51] at 7.)  According to Defendant's

counsel, this was a mischaracterization because Defendant had previously filed

a motion to dismiss that explicitly challenged the sufficiency of Dr. Prince's

affidavit.  (See Def.'s Mot. to Dismiss, Dkt. [4] at 8.)  When Defendant's

counsel pointed this out, Plaintiff's counsel agreed to look into the identified

mischaracterizations.  (Kanik Aff., Dkt. [59-2] ¶ 4.)  Nonetheless, Plaintiff's

counsel took no action before Defendant's reply was due.  (Id. ¶ 5.)

      As a result, on March 3, 2016, Defendant's counsel served a Motion for

Sanctions on Plaintiff, but did not file it.  This satisfied Rule 11(c)(2), which

says that a motion for sanctions "must be served . . . but it must not be filed or

be presented to the court if the challenged paper, claim, defense, contention, or

denial is withdrawn or appropriately corrected within 21 days after service."

FED. R. CIV. P. 11(c)(2).  On March 24, 2016, the final day in the 21 day

window, Plaintiff filed her Amended SMF and Amended Opposition Brief.

AO 72A
(Rev.8/82)

Rather than arguing that Defendant had *never* challenged the sufficiency of Dr. Prince's affidavit, Plaintiff's Amended Opposition brief instead argued that "Defendant's January 11, 2016 Motion for Summary Judgment does not challenge the adequacy of [Dr. Prince's] affidavit." (Pl.'s Am. MSJ Opp'n Br., Dkt. [56] at 7.)  But according to Defendant, Plaintiff's amended filings nonetheless made several additional missstatements of the record.

First, Plaintiff argued in her Amended Opposition Brief that the only reason that she did not take the depositions of Defendant's experts was that they were disclosed "on December 12, 2015, only six (6) days before the close of discovery." (Pl.'s Am. MSJ Opp'n Br., Dkt. [56] at 11.)  Defendant claims that this was not true.  Defendant actually disclosed its expert witnesses and sent copies of their expert reports to Plaintiff's counsel several weeks earlier—on November 13, 2015.  Indeed, correspondence between the parties confirms that this is true.  Second, Defendant claims that Plaintiff misstated several dates in her Amended SMF.  For example, Plaintiff stated that "[t]he visit to Dr. Harbin on March 19, 2012 was after the loss of her unborn child." (Pl.'s Am. SMF, Dkt. [55] ¶ 5.)  Plaintiff's medical records, on the other hand, show that Plaintiff was transported to Dr. Harbin while her fetus was still alive.

14

Because of these new misstatements, Defendant filed its Motion for Sanctions [59] seeking attorney's fees and costs incurred in responding to all of Plaintiff's filings in opposition to Defendant's Motion for Summary Judgment [43] and in filing the Motion for Sanctions [59] itself.  Defendant argues that sanctions are warranted because: (1) Plaintiff misstated the date that Defendant disclosed its experts; (2) Plaintiff's argument that Defendant did not challenge the adequacy of Dr. Prince's affidavit was frivolous; (3) Plaintiff misrepresented that the Court could rely on Dr. Prince's affidavit to deny summary judgment; and (4) Plaintiff misstated several dates in its Amended SMF.

Rule 11(b) provides that when an attorney presents to the Court a pleading, written motion, or other paper, the attorney certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing

existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).  If the Court determines that Rule 11(b) has been violated, it may "impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation."  FED. R. CIV. P. 11(c)(1).

Plaintiff's counsel admits to misstating the date that Defendant disclosed its experts.  Plaintiff's counsel claims that this misstatement was "an honest mistake based on counsel's review of the pleadings."  (Pl.'s Br. in Opp'n to Mot. for Sanctions ("Pl.'s Sanctions Opp'n Br."), Dkt. [60] at 10.)  But honest or not, an inquiry "reasonable under the circumstances" should have easily uncovered the actual date that Defendant disclosed its expert witnesses.  Also, Plaintiff's counsel does not deny having misrepresented that she visited Dr. Harbin on March 19, 2012, after the loss of her unborn child, (Pl.'s Am. SMF, Dkt. [55] ¶ 5), and that she miscarried on March 19, 2012.  (Pl.'s Am. MSJ

16

Opp'n Br., Dkt. [56] at 4.)

Plaintiff's counsel initially misstated that Defendant never challenged the sufficiency of Dr. Prince's affidavit and then corrected this misstatement in the Amended Opposition Brief by stating that he intended to state that Defendant never challenged the sufficiency of Dr. Prince's affidavit in its Motion for Summary Judgment.  (Pl.'s Am. MSJ Opp'n Br., Dkt. [56] at 7.)  It is not completely clear whether Plaintiff ever abandons the position that Dr. Prince's affidavit could be used to oppose summary judgment.  In any event, while the Court finds that the position lacks merit, it is not frivolous.

Thus, the Motion for Sanctions is premised primarily on the misstatements of dates, which were readily correctable by Defendant.  While the Court understands Defendant's frustration with Plaintiff's counsel's conduct, the Court finds that sanctions are not warranted.  Therefore, Defendant's Motion for Sanctions [59] is **DENIED**.

### Conclusion

As discussed above, Plaintiff's Motion to Amend Statement of Material Facts [55] and Motion to Amend Brief in Opposition to Defendant's Motion for Summary Judgment [56] are both **GRANTED**.  Defendant's Motion for

Summary Judgment [43] is **GRANTED** and Motion for Sanctions [59] is

**DENIED**.

      **SO ORDERED**, this 7th day of September, 2016.

_____
**RICHARD W. STORY**
United States District Judge